In re CENTRE DE TRICOTS DE GASPE LTEE, and Harry Brummer, Debtors.

Jeanette TAVORMINA, Trustee, Plaintiff,

v.

Harry BRUMMER, Sylvia Siegal, Sylvia Siegal, Inc., a Florida corporation, Harry Smith, Trustee, Samuel Friedman Management Company, Inc., and Acofin Investment, Inc., Defendants.

Bankruptcy No. 79–01491–BKC–SMW. Adv. No. 81–0557–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Oct. 4, 1982.

Arthur S. Weitzner, Coral Gables, Fla., for trustee.

William M. Manker, Miami, Fla., for debtors.

Bernard S. Mandler, Miami Beach, Fla., for defendants Smith, Acofin and Friedman.

Maynard J. Hellman, Miami, Fla., for Sylvia Siegal, Inc. and Sylvia Siegal.

Paul J. McMahon, Miami, Fla., for creditors.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE coming on to be heard upon a Complaint filed herein and the Court, having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

This Court has jurisdiction of the parties hereto and the subject matter hereof.

Harry Brummer became a debtor pursuant to an involuntary proceeding brought against him on January 4, 1980. Jeanette Tavormina, the plaintiff herein, was appointed interim trustee and subsequent to the entry of the Order for Relief she became the permanent trustee. After re-

peated efforts by the trustee and creditors, the debtor filed schedules which did not indicate any interest whatsoever in the property which is the subject matter of this lawsuit. Furthermore, the debtor has offered no valid explanation why this property or an interest in same was not listed as his property. Accordingly, the Court finds that the property that is the subject matter of this lawsuit was fraudulently concealed from the debtor's pre-petition creditors. During an earlier proceeding, the debtor waived the right to a discharge from his debts, rather than disclose certain material evidence.

This adversary proceeding concerns the avoidability of certain post-petition transfers. The trustee commenced this proceeding by filing a complaint seeking injunctive relief and a separate motion seeking a temporary restraining order.

In support of her motion for a temporary restraining order, the trustee offered a contract between Brummer and the Three Island Corporation which called for a sale of the property to the Three Island Corporation for Two Million Eight Hundred Thousand Dollars ($2,800,000.00). The contract stated that Brummer was the beneficial owner of a parcel of real property located at 6400 Collins Avenue, Miami Beach, Dade County, Florida.

The Court entered a temporary restraining order restraining Brummer, Sylvia Siegal Inc., Sylvia Siegal individually, and Harry Smith, (a land trustee) from transferring any interest in the real property and certain personal property. Subsequently, the temporary restraining order was merged into a preliminary injunction which remains in full force and effect to this date. To preserve the status quo, the preliminary injunction tolled the expiration of an option to purchase the land in favor of Sylvia Siegal, Inc. An express condition of the injunction was that the trustee should file an Amended Complaint which would state with particularity her claim for relief concerning the subject property.

The trustee filed an Amended Complaint which joined the additional named defend-

ants, Samuel Friedman Management Company Inc. and Acofin Investment, Inc. The Amended Complaint sought relief on two grounds:

A. Against the defendants Sylvia Siegal, Inc., Samuel Friedman Management Company Inc. and Acofin Investment, Inc., as partners in the joint venture, (Buckingham Place) for a post-petition transfer of property valued in excess of One Million Dollars ($1,000,000.00).

B. Against Sylvia Siegal, Inc., Sylvia Siegal individually and Harry Brummer for recovery of a sum in excess of Two Hundred Fifty Thousand Dollars ($250,000.00) representing proceeds from the allegedly concealed property to which the debtor obtained access.

For the purpose of clarity, the foregoing theories for the trustee's recovery will be discussed in separate portions of this Order and will be referred to hereinafter as the (a) "liability of Buckingham Place" and (b) "liability of Sylvia Siegal and Sylvia Siegal, Inc." The rights, duties and liabilities of the land trustee, Smith, will also be discussed separately.

The remaining pleadings framing the issues are the answers of the various named defendants and a crossclaim filed by the debtor against Samuel Friedman Management Company, Inc., and Acofin Investments, Inc. and a separate counterclaim against the trustee which was severed.

The facts which are common to the liability of all parties are set forth as follows:

At the commencement of the involuntary proceedings, the debtor was the purchaser of certain real estate under three executory deposit receipt contracts which are described as follows:

A. A contract with Frank and Jean May, dated August 4, 1979, concerning the following described real property:

Lots 58 and 59 of Block 7 and Second Oceanfront amended plan, Plat Book 28, Page 28, Miami Beach, Florida.

B. A contract with Herbert Rockwell, dated October 13, 1979, concerning:

Lot 9 in Block 7 of Second Oceanfront Subdivision, according to the Plat thereof as recorded in Plat Book 28, Page 28 of the Public Records of Dade County, Florida.

C. Agreement to acquire the stock of Sixty-Fifth Street Corporation which owned:

Lots 8, 56, and 57 in Block 7 of the amended Plat, of Second Oceanfront Subdivision as recorded in Plat Book 28, Page 28 of the Public Records of Dade County, Florida.

Collectively these lands are the properties that are set forth in the contract for sale to the Three Island Corporation, and in totality constitute the real property which is the subject matter of the preliminary injunction. This land was to be the underlying real estate for a project which the debtor had been developing for several years called "Buckingham Place".

On March 13, 1980, while the involuntary petition was pending, a joint venture agreement was signed by and between the defendants Sylvia Siegal, Inc., Acofin Investment, Inc. and Samuel Friedman Management Company, Inc. Pursuant to this agreement, but without transfer of legal title, the aforestated land become the property of the joint venture. The evidence reflects and the Court finds that Sylvia Siegal, Inc., paid no money for the deeds and was acting solely as the agent for Brummer in accepting the title to these lands. At trial the remaining joint venture partners denied liability on two grounds:

A. They had no knowledge that Sylvia Siegal, Inc. was acting for Brummer.

B. They had no knowledge that Brummer was engaged in Bankruptcy proceedings.

Concerning the defendants first contention, the Court finds that all of the joint venture partners knew or should have known that Sylvia Siegal, Inc., was acting for Harry Brummer. This is clear from the evidence presented which is summarized as follows:

1. The initial discussion concerning the Buckingham Place "project" was conducted by Samuel Friedman, principal of Samuel Friedman Management Company, Inc. and an authorized agent of Acofin Investment, Inc., and Harry Brummer. Many of these discussions took place in the fall of 1979, prior to the commencement of the bankruptcy proceedings.

2. The negotiations which resulted in the Agreement of March 13, 1980, were principally conducted between Brummer and Friedman, and Brummer was the indispensable party to said negotiations. This fact is supported by the following evidence:

a. The negotiations were suspended while Brummer made a trip to Canada.

b. The Agreement between May and Brummer which was ultimately closed in the name of Dale Heckerling, a land trustee, (for the benefit of the joint venture) was never assigned by Brummer.

c. The joint venture agreement (which was never executed by Brummer) provides in paragraph 14 for various services to be rendered by Brummer without compensation and which services Brummer did render.

d. The minutes of the partnership meeting held April 1, 1980 clearly state that Brummer was the party who sold this transaction to the joint ventures.

e. Various agreements which were negotiated by the three joint venture partners, with a view towards termination of the joint venture, were conducted by Samuel Friedman and Brummer.

As to the defendants' second contention, the Court need not reach a decision because the Court finds the consideration paid for the property was insufficient. The evidence reflects that at the time the joint venture acquired the property the net value of its equity interest in the land was One Million Two Hundred Seventy-Six Thousand Two Hundred Fifty-Three Dollars ($1,276,253.00). The evidence also reflects that the sole consideration paid by the joint venture in conjunction with the acquisition of the land was Sixty Thousand Dollars

($60,000.00). The Court finds that the joint venture did not pay fair equivalent value for the acquisition of the land.

Bankruptcy Code Section 549(c) protects a good faith purchaser who, without knowledge of the commencement of the case, acquires property for present fair equivalent value. This exception to the trustee's avoidance power is not available to the defendants since they did not pay fair equivalent value.

The Court finds that the transfer between the debtor and Buckingham Place, a joint venture, is a post-petition transfer avoidable pursuant to Section 549 of the Bankruptcy Code.

### Liability of Buckingham Place (Joint Venture)

■ As a "joint venture", Buckingham Place falls within the definition of a partnership which is an association of two or more persons to carry on a business for profit as co-owners. (FS 620.585). The partnership has been made a defendant to this action by the joinder of all three joint venture partners, to wit Sylvia Siegal Inc., Samuel Friedman Management Company, Inc. and Acofin Investment, Inc. According to Florida Law, which controls in this instance, "a partnership is bound to make good a loss when the partnership, in the course of business receives money or property of a third person and the money or property so received is misapplied by a partner while it is in the custody of the partnership." (FS 620.625(2)) All partners are jointly and severally liable in such a situation. (FS 620.63)

After the acquisition of title by the joint venture, various disputes arose among the debtor and the three joint venture partners resulting in the ostensible dissolution of the partnership and in the title being placed in the name of Harry Smith, Land Trustee, as attorney and agent for two of the partners, Samuel Friedman Management Company, Inc. and Acofin Investment Inc. Dissolution of the partnership does not effect the liability of the joint venture to any creditor including a trustee in bankruptcy when applicable. (FS 620.735).

Section 550 of the Bankruptcy Code dealing with Transferee Liability applies in this case and provides that:

"To the extent that a transfer is avoided under Section 549 (inter alia) the trustee may recover for the benefit of the estate, the property transferred, or if the Court so orders, the value of such property from any immediate or mediate transferee of such initial transferee"

Since the title to the property is no longer in the name of the joint venture, the trustee is entitled to recover the value of the property from the three named defendants (Sylvia Seigal, Inc., Samuel Friedman Management Company, Inc. and Acofin Investment, Inc.) in the amount of One Million Two Hundred Seventy-Six Thousand Two Hundred Fifty-Three Dollars ($1,276,253.00) less the Sixty Thousand Dollars ($60,000.00) paid for the property to May for a total recovery of One Million Two Hundred Sixteen Thousand Two Hundred Fifty-Three Dollars ($1,216,253.00). Since the liabilities of the debtor estate may be substantially less than this sum of money, the recovery by the trustee will be limited to the amount of the allowable claims against the debtor estate, it being the specific intention of the Court to prohibit the Debtor from obtaining a liquidating dividend, or to otherwise profit from his acts.

### Liability of Sylvia Siegal and Sylvia Siegal, Inc.

Sylvia Siegal, and a corporation which she controls, Sylvia Siegal, Inc. were each joined as Defendants. At the conclusion of the trustee's case the Court granted a Motion to Dismiss against Sylvia Siegal individually since no evidence was presented indicating that any of the funds utilized in this transaction passed to Sylvia Siegal individually. At the time of closing argument, the trustee asked the Court to reconsider this ruling which was taken under advisement. That request is now denied. The count against Siegal was to recover an approximate sum of Two Hundred Sixty Thousand Dollars ($260,000.00) which was

received by Sylvia Siegal, Inc. and turned over to the debtor. This amount is included in the amount of One Million Two Hundred Sixteen Thousand Two Hundred Fifty-Three Dollars ($1,216,253.00) for which Sylvia Siegal, Inc. is jointly and severally liable and accordingly no further relief will be ordered against Sylvia Siegal, Inc.

### Liability of Harry Smith, Land Trustee

In May of 1981, the joint venturers, pursuant to various agreements to terminate the joint venture, conveyed legal title to the property to Harry Smith, Land Trustee. Harry Smith took title for no new consideration and solely as agent for two of the joint venturers. Since the real property transferred to Smith remains partnership property, the preliminary injunction issued is to remain in full force and effect and the Trustee, Jeanette Tavormina, is, by the terms of the Final Judgment, granted leave to sell said property. In conjunction with the title held by Smith, Land Trustee, the record indicates that various payments may have been made by Smith or his principal, which have a tendency to "improve" the land, as contemplated by Section 550(d). Section 550(d) provides that a party who is a good faith transferee shall have a lien on the property to secure the lesser of the cost of any improvement less the amount of profit realized by such transferee and any increase in value as a result of such improvement. The Court concludes that it is premature to determine the validity and priority of this lien, vis-a-vis the rights of the Bankruptcy Trustee, until the property is sold with notice to parties in interest.

### The Crossclaim of Brummer

The debtor, Harry Brummer, has filed a crossclaim against the defendants, Smith, Friedman and Acofin, which seeks a determination of the validity and priority and amount of various competing liens. The Debtor has no interest in any proceeds of this lawsuit nor will he be granted any. Furthermore, the lien rights of these prospective parties have been determined herein (other than those issues which have been deferred). Any additional issues raised by the crossclaim have either been decided or are moot. Therefore the Final Judgment will provide that the Debtor's Crossclaim for Declaratory Relief is denied. Pursuant to Rule 921(a) of Rules of Bankruptcy Procedure a separate Final Judgment will be entered in accordance herewith.